## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RUSSELL L. EBERSOLE | : | |
| Plaintiff | : | |
| v | : | Civil Action No. CCB-08-2416 |
| UNITED STATES OF AMERICA, *et al.* | : | |
| Defendants | : | |

o0o

### MEMORANDUM

Pending is defendants' motion to dismiss or for summary judgment.  Although plaintiff was advised of his right to file a response in opposition and of the consequences of failing to file a response, and given an extension of time to do so, he has not opposed the motion.  For the reasons set forth below, defendants' motion shall be granted.

### Background

Plaintiff, a federal inmate at the time this case was instituted,[1] states he was transferred to the Federal Medical Center in Lexington, Kentucky (FMC Lexington) , where he remained from April 11, 2007 to January 11, 2008 for by-pass surgery and treatment of "Methicillian Resistant Staphocol Aureas" [sic] (MRSA) infection.  Paper No. 1, p. 6.   He claims he was classified as "medically unassigned" by Dr. Morelles, which meant he should not be assigned to any inmate work details, including normal, extra, or special duty assignments.  *Id.*

Plaintiff volunteered to work in the recreation department as a guitar technician in November 2007.  *Id.* at p. 7.   Plaintiff was required to report to the guitar room at 4:30 p.m. for purposes of the "p.m. recreation move."  *Id.*   At the time plaintiff was living in the Health Care Unit (HCU).   He claims that on December 19, 2007, he was on his way to the guitar room when

---

[1]  Plaintiff was released from custody on October 24, 2008.

Officer Stump ordered him to go outside.  Plaintiff claims he was wearing only a t-shirt and shorts at the time and explained to Stump that he was a recovering cardiac patient.  Plaintiff further alleges that he asked Stump if he could go back to put more clothes on before going outside, but Stump refused to allow him to do so.  Plaintiff asked for Stump's name but Stump refused to tell him, became irritated with Plaintiff, and ordered him to "hold up the wall." [2] Plaintiff states Stump left to talk to Lieutenant Quinn and a discussion ensued regarding whether plaintiff could be charged with being in an unauthorized area.  Ultimately plaintiff was ordered to work "extra duty" in lieu of being charged with a rule violation.  Plaintiff was taken to an outdoor area to work under the supervision of another officer, picking up rocks.  He claims he remained there for 4 ½ hours, in temperatures of 31 degrees with a wind chill of 27 degrees. Plaintiff alleges he asked four times if he could go inside to warm up, but he was told to remain outside working.  *Id*. at p. 8.

Plaintiff states he talked to Warden Dewalt on the following morning, telling him that he was subjected to corporal punishment and incurred an injury to his left big toe.  *Id*. at p. 9. Plaintiff was escorted to the medical unit for treatment of his toe.  Plaintiff states that Dr. Morelles examined his toe, prescribed 500 mg of Cephalexin, and told plaintiff his toe nail would need to be removed.  Plaintiff further states that the doctor noted necrosis, blood between the nail and nail bed, and severe swelling.  A follow-up appointment was scheduled for December 26, 2007.  *Id*.

At his follow-up appointment, plaintiff was seen by P.A. Zagula, who confirmed subcutaneous tissue damage under the toe nail with necrosis, and scheduled plaintiff to have the toe nail removed.  Plaintiff claims the surgery was scheduled, but later cancelled because he was taking blood thinners at the time and would require monitoring that was not available at FMC

---

[2] "Hold up the wall" is an order given to inmates requiring them to stand at attention against the wall.

Lexington.  *Id.*

Plaintiff claims he had a meeting with Lt. Quinn on January 7, 2008, during which she stated that assigning plaintiff extra duty was wrong given his medically unassigned status at the time.  *Id.* at p. 11.  Plaintiff alleges she further stated that ordering him to work in the cold was wrong and that she would find out who did it and send them back for re-training.  Plaintiff claims he informed Quinn that she was the supervisor on duty at the time and that she ordered him to perform the extra duty in question.  He alleges she apologized and asked plaintiff what he wanted to informally resolve the matter.  Plaintiff claims he asked for formal apologies as well as a transfer back to the Cumberland, Maryland facility.  Although plaintiff did not receive the formal apologies requested, he was transferred back to Maryland shortly after his meeting with Quinn.

On February 27, 2008, plaintiff met with Dr. Moubarek about the treatment and care of his toe.  *Id.* at pp. 11 and 12.  He claims Moubarek asked P.A. Forester to remove plaintiff's toe nail, but Forester refused and said plaintiff should be referred to an outside specialist.    On March 3, 2008, plaintiff was told that removal of his toe nail was too risky due to the anti-coagulation drugs he was taking and it would require a lot of paperwork to refer him to an outside specialist.  Plaintiff claims Dr. Moubarek then sent him back to his cell and refused to refer him to an outside physician.  *Id.* at p. 12.

Defendants claim that plaintiff reported to medical at FCI Cumberland on February 27, 2008, complaining his toe had frostbite, but upon examination there was no evidence of frostbite.  Paper No. 14 at Ex. 2, Attachment A.  Dr. Moubarek noted that there was dried blood under the nail of Ebersole's left big toe, which appeared to be the result of a prior injury, there was no evidence of skin loss or dead tissue, and plaintiff did not exhibit loss of function in the toe.  *Id.*

Dr. Moubarek informed plaintiff that referral to a podiatrist for removal of his toenail was not necessary.  On March 3, 2008, plaintiff again came to the medical unit complaining that his toe hurt due to frostbite which occurred at a previous institution.  Dr. Moubarek's examination again revealed no evidence of frostbite or circulatory deficits, therefore he informed plaintiff it was medically unnecessary to remove his toenail.  Dr. Moubarek further informed plaintiff that the anticoagulant medication he was taking for his artificial heart valve would put him at risk of complications if his toenail was removed.

On October 8, 2008, plaintiff again complained about pain in his left big toe which he claimed was previously frostbitten.  Upon examination plaintiff's toe was red, tender, warm to the touch, and swollen, indicating a skin infection.  An antibiotic was prescribed to treat the infection and plaintiff was scheduled for a follow-up visit on October 16, 2008.  Plaintiff returned for the follow-up visit on October 16, 2008, but there are no notations regarding his toe.  Other notations indicate that plaintiff's medications were renewed and adjusted and he was counseled about continued care for his chronic conditions.  Plaintiff was released from incarceration on October 24, 2008.

## Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion.  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is

that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest

upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club,*

*Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all

reasonable inferences in her favor without weighing the evidence or assessing the witnesses'

credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but

the court also must abide by the "affirmative obligation of the trial judge to prevent factually

unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal

quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

### Federal Tort Claims Act

Plaintiff claims that staff at FMC-Lexington negligently ordered him outside into cold

weather, causing him to sustain a permanent physical injury to his feet and toes. Paper No. 1 at

p. 13. In addition, he claims there was a failure to treat his injury by staff at FCI Cumberland. *Id*.

Under the FTCA, the United States is liable, as a private person, for "injury or loss of

property, or personal injury or death caused by the negligent or wrongful act or omission of any

employee of the Government while acting under the scope of his office or employment."   28

U.S.C. § 1346(b)(1) (1994). As a waiver of sovereign immunity, the FTCA is to be narrowly

construed.  *See United States v. Nordic Village, Inc*., 503 U. S. 30, 34 (1992).  If the conduct

complained of amounts to negligence "in accordance with the law of the place where the act or omission occurred," the United States may be held liable.  28 U.S.C. § 1346(b)(1).  In analyzing plaintiff's negligence claim, this court must apply the law of the state where the alleged negligent act occurred.  *See Rayonier, Inc. v. United States*, 352 U.S. 315, 318 (1957) (noting that Washington law was to be applied where the alleged tort occurred in Washington State).

Under Kentucky law, plaintiff must establish defendants owed him a duty of care; breached that duty of care; and the breach was the proximate cause of his injury. *See Grubbs ex rel. Grubbs v. Barbourville Family Health Ctr., P.S.C.*, 120 S. W. 3d 682, 687 (Ky. 2003).  "The absence of any one of the three elements is fatal to the claim." *M & T Chem., Inc. v. Westrick*, 525 S. W. 2d 740, 741 (Ky. 1974) (internal quotation marks omitted) (quoting *Illinois Cent. R.R. v. Vincent, Ky.*, 412 S. W. 2d 874, 876 (1967)).

The gravamen of plaintiff's complaint is that he was ordered to do manual labor in cold weather when he was "medically unassigned."  Paper No. 1.  Defendants owed him a duty of reasonable care to insure he remained safe.  While there may have been some risk involved in ordering plaintiff to work under the conditions described, defendants have presented medical evidence indicating that plaintiff did not suffer frostbite to his toe. Paper No. 14 at Ex. 2. Plaintiff fails to refute that evidence.  Thus, notwithstanding the issue whether plaintiff should have been ordered to work outside in cold weather, there is no evidence that an injury resulted from the conduct.  Absent a cognizable injury, plaintiff's claim must fail.

### *Bivens*[3] Claim

In order to state a constitutional claim for denial of medical care a prisoner must

---

[3] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

demonstrate that the defendants' acts or omissions amounted to deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In essence, the treatment rendered must be so grossly incompetent or inadequate "as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Id.* Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U. S. 825, 837 (1994). "Compelling a showing of significant physical or emotional harm, or a grave risk of such harm, infuses an element of objectivity into the analysis, lest resolution of the seriousness of a deprivation devolve into an application of the subjective views of the judges deciding the question." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (internal citation omitted). Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). Mere negligence or malpractice does not rise to a constitutional level. *Estelle*, 429 U.S. at 106; *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986). Prison officials who are charged with deliberate indifference to a serious medical need must "know of and disregard the objectively serious condition, medical need, or risk of harm." *Shakka*, 71 F. 3d at 166.

Defendants have established, and plaintiff fails to refute, that plaintiff's complaints regarding toe pain were addressed. His claim that he suffered frostbite to his toe was not confirmed by medical staff. The infection noted more than nine months after he was required to work in the cold does not substantiate plaintiff's claim. Nevertheless, it is clear plaintiff's toe

pain and infection were addressed.  In short there is no evidence that there was a serious medical need which was ignored by defendants and, thus, the claim must fail.

Accordingly, by separate order which follows, defendants' motion for summary judgment shall be granted.


<u>December 17, 2009</u>                                    <u>      /s/                          </u>
Date                                                                Catherine C. Blake
                                                                    United States District Judge